### RIVERSIDE BANK *v.* TOTTEN *et al.*

*(Supreme Court, General Term, First Department. October 24, 1890.)*

SUBROGATION—RIGHTS OF ACCOMMODATION INDORSER.
A note presented to plaintiff bank for discount by the payee and indorser was declined without a second indorsement. The maker thereupon procured the indorse-

ment of defendant, and returned the note to the payee, who procured it to be discounted by plaintiff and the proceeds credited to himself. *Held,* that knowledge that defendant was an accommodation indorser was acquired by plaintiff through its cashier, and that defendant was entitled to be subrogated to the benefit of collateral deposited by the payee with plaintiff, and to its application to the payment of the note.

Appeal from judgment on report of referee.

Action by Riverside Bank against William H. De Wolf, Stephen H. Mapes, and John Totten. Plaintiff appeals from the judgment of a referee directing that judgment be entered against plaintiff and in favor of defendant Totten.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Myndert A. Vosburgh,* (*Emanuel J. Myers,* of counsel,) for appellant. *Robert W. Gilbert,* for respondents.

DANIELS, J. The action was commenced against the maker and two indorsers of a promissory note. The maker and payee made no defense, and judgment was taken against them by default. The note was dated on the 1st day of December, 1887, for the sum of $3,000, to the order of Stephen H. Mapes, and became due in three months. It was not paid at the time of its maturity, and was then protested for non-payment. This note was made to renew a preceding note for the same amount, made and indorsed by the same persons. That note was first presented to the plaintiff for discount by the payee, but the bank declined to receive it without another indorser. That was reported by the payee to the maker, and the latter thereupon obtained the indorsement upon it of the defendant. It was then returned to the payee, and he procured it to be discounted and the proceeds credited to himself, and he then delivered his check for the same, with $2,000 more, to the maker, who received the money upon it. The maker and payee had other dealings together, in the course of which the latter raised this money for the former, but what was the precise condition of their accounts did not appear. It was, however, proved that the payee undertook to obtain the money as he did for the maker of the notes. The defendant received no consideration whatever for either of his indorsements, nor was he under any obligation to make them, but he made them solely at the request of the maker of the notes, and he thereby became, and incurred the obligations only of, an accommodation indorser. *Vose* v. *Railroad Co.,* 50 N. Y. 369, 374; *Dunn* v. *Parsons,* 40 Hun, 77, 79. And as the notes were each payable to the order of the defendant Mapes, and were indorsed by him, he as well as the maker incurred liability for their payment, antecedently to that of the defendant Totten, the second indorser. *Bacon* v. *Burnham,* 37 N. Y. 614; *Herrick* v. *Carman,* 12 Johns. 159; *Phelps* v. *Vischer,* 50 N. Y. 69; *Coulter* v. *Richmond,* 59 N. Y. 478. And to place him in that relation to the paper it was unimportant whether he or Mapes first indorsed his name upon it. That of the defendant Totten was necessarily from the form of the paper the second indorsement, rendering him liable upon it after the defendant Mapes, and information of this fact and of the second indorsement, being that of an accommodation indorser, was acquired by the cashier of the bank from the form given to the transaction of the business, for the note was first presented to him by the payee and first indorser, for discount, and that was declined without another indorser, and when that had been obtained, it was returned again by the same person for whom the discount was made, and the money was carried to his credit in his account with the bank; and these facts indicated that the defendant Totten had not himself received the note in the course of business, but had indorsed it for the benefit of one or both the other parties to it. By his indorsement he became no more than the surety of both the maker and the payee, who was the first indorser, and this fact was afterwards brought more directly to the knowledge of the bank by a written notice from Totten to that effect.

Before that notice was served, and after judgment had been entered against the maker and the-payee, the latter deposited with the bank the sum of $3,000 as collateral security for this note, and the present defendant, by a supplemental as well as an amended answer, claimed to have the benefit of this deposit by the application of the amount as payment upon the note; and that he was at liberty to do under section 544, Code Civil Proc. It was also alleged in support of the right to have this application made of the deposit that the other parties to the paper were insolvent, and the evidence supported that allegation; and by the decision of the referee, this application was made of the deposit, and no good reason appears for questioning the correctness of that application of it. There was no ground whatever for doubting the right of the bank to make the application. The money had been unqualifiedly placed in its possession, and subject to its control, as security for this debt, and it had not been restricted as to the time when it should make the deposit available by way of actual payment; and neither the depositor nor any other person denied the right of the bank so to use the money. It was left subject to the control of the bank, which was at full liberty to apply it as actual payment whenever it elected to do that. The payee who made the deposit reserved no power to withdraw it, or to apply it to any other object, and at no time forbid this application. He as well as the maker of the note may also very well be assumed to have assented to this disposition of the money, for each was sworn and examined as a witness for the plaintiff on the trial without suggesting any objection or dissent to that application of the deposit. In these important respects this case is entirely different from that of *Koehler* v. *Bank,* 4 N. Y. Supp. 232, where the right to apply the securities to the exoneration of the indorser was resisted and denied, and adverse and paramount claims were made to them by others. This case is wholly divested of these features. The bank had the money as collateral to this very debt, and an unrestricted power to apply it at any time to its payment; and there was no equity in its resistance to that application. It was bound, on the contrary, to yield to the claim made by this defendant, which it could at any time have done without embarrassment to itself or injury to another. All that was required was the change of the collateral into a credit of payment, as it had already used and had the complete benefit of the money in its business; and that it was equitably bound to do for the relief of this defendant. There was neither sense nor justice in demanding or enforcing payment from him, when the next moment after making it he could legally recover this deposit for his own reimbursement from the bank. The case just referred to supports the defense which was made and allowed, and so in principle do the cases of *Vose* v. *Railroad Co.,* *supra;* *Wright* v. *Austin,* 56 Barb. 13; *Grow* v. *Garlock,* 97 N. Y. 81, 86, 87; *Bank* v. *Silliman,* 65 N. Y. 475, 479; *Wilder* v. *Butterfield,* 50 How. Pr. 386, 400. The referee may have characterized the use of the money by the bank in terms of too much severity, and misapprehended the particular time when this defendant made his indorsement. But if he did, that did not render his final decision incorrect as long as it has been fully supported by the other facts proved by the evidence. Upon the undisputed facts the disposition made of the action seems to be right, and the judgment should be affirmed. All concur.